# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

FRANK ADAMS,
    Petitioner,

v.

SHERRY BURT,

    Respondent,
                                      /

Civil No. 2:05-CV-73603
HONORABLE GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Frank Adams, ("petitioner"), presently confined at the Ryan Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree felony murder, M.C.L.A. 750.316, armed robbery, M.C.L.A. 750.529, assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84; and three counts of possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, petitioner's application for writ of habeas corpus is **DENIED.**

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Oakland County Circuit Court. Both petitioner and respondent have provided the court with extensive factual summaries of the case. Because the facts of this

1

case have been repeated numerous times, they need not be repeated here in their entirety. Therefore, only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997). Accordingly, the Court will merely recite verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

> The charges arise out of the robbery and shooting of Tracey Kinsey, who was 25 ½ weeks pregnant at the time. Kinsey was shot in the stomach. An emergency Caesarean section was performed and the baby lived for a little over an hour. Defendant gave police a statement asserting that the shooting was accidental. At trial, he offered an alibi defense, maintaining that he gave the earlier inculpatory statement because the true perpetrator, who used the gun in a subsequent robbery, threatened defendant's family.
>
> *People v. Adams,* No. 244314, * 1 (Mich.Ct.App. February 24, 2004).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 471 Mich. 884; 688 N.W.2d 502 (2004). Further facts will be discussed when addressing petitioner's claims. Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

> I. Violation of due process of law. There was insufficient evidence to prove that the fetus was born alive.
>
> II. The trial court omitted an element in the felony murder instruction.
>
> III. Defense counsel provided ineffective assistance of counsel.

2

## II. Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claim # 1. The sufficiency of evidence claim.**

Petitioner first claims that there was insufficient evidence to convict him of first-degree felony murder.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Gardner v. Kapture,* 261 F. Supp. 2d 793, 805 (E.D. Mich. 2003)(*quoting Walker v. Engle*, 703 F. 2d 959, 970 (6th Cir. 1983)). A habeas court does not substitute its own judgment for that of the finder of fact. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 606 (E.D. Mich. 2002). Finally, in reviewing a sufficiency of evidence claim on habeas review, the *Jackson*

standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 607-08 (*quoting Jackson*, 443 U.S. at 324 n. 16).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

Petitioner claims that the prosecution failed to prove the first element of felony-murder, arguing that he did not kill a human being because the baby was not born alive and thus was not a "person," at least for purposes of the felony murder statute.

In *People v. Selwa*, 214 Mich. App 451, 464; 543 N.W. 2d 321 (1995), the Michigan Court of Appeals held that a child is born alive and is thus considered a human being, for purposes of Michigan's homicide statutes, if following the child's expulsion or extraction from the mother, "there is *lacking* an irreversible cessation of respiratory and circulatory functions or brain functions." (emphasis original). Moreover, the necessity of medical intervention to revive or bring one to life does not preclude a finding that a person is born alive, for purposes of

Michigan's homicide statutes. *Id.* at 469.

The Michigan Court of Appeals in *Selwa* held that evidence of the child's spontaneous breathing and heartbeat after an emergency delivery, coupled with inference of brain activity, was sufficient evidence that the defendant caused the death of a "person" to support binding her over on a charge of negligent homicide, even though the child could have been considered stillborn for the first ten minutes after delivery, where the child thereafter showed improved heartbeat and made some gasping respirations. *Selwa,* 214 Mich. App. at 467-68.

The Michigan Court of Appeals in petitioner's case relied upon the holding in *Selwa* to conclude that there was sufficient evidence to establish a finding that the baby in this case was born alive, so as to allow a rational trier of fact to conclude that petitioner killed a human being, for purposes of the felony murder statute:

> Under the *Selwa* irreversible cessation of respiratory and circulatory function or brain function standard, there was sufficient evidence to support a finding that the baby was born alive. In *Selwa*, this Court stated that the fact that the baby had a heart rate and spontaneously breathed negated a finding of death and thus was evidence of life. *Selwa, supra*, at 469. Here, the evidence presented at trial showed that the baby had a heartbeat, and that although she was on a respirator, she took at least one independent breath. These signs of life, including a slightly improved skin color, resulted in a positive Apgar score. In fact, the baby had a higher Apgar score, three, than the baby in *Selwa*, who scored a two. The baby's improved heartbeat and color, and the evidence that there was some independent breathing was adequate to support a finding that the initial cessation of respiratory and circulatory functions at birth was not irreversible. *Adams,* Slip. Op. at * 2 (footnote omitted).

At petitioner's trial, Doctor David DeWitte, the neonatologist at William Beaumont Hospital, testified that the baby, Hailey Kinsey-Keehn, was delivered by Caesarean section and received at the neonatal intensive care unit. When admitted to the neonatal unit, the baby was in shock and on a ventilator. Dr. DeWitte testified that the baby's heart rate was depressed. Epinephrine was injected into her lungs to increase her heart rate, which the drug managed to do. Dr. DeWitte testified that a certificate of live birth was prepared. The baby was born at 1:46 a.m. and died at 2:48 a.m., when no heart rate was detected. The baby was born after 25 and 4/7 weeks' gestation. Infants born at that time have a survival rate of 60 to 70%.

Oakland County Deputy Medical Examiner Dr. Valery Alexandrov testified that he performed the autopsy on Hailey Kinsey-Keehn. Dr. Alexandrov testified that the baby was born alive and was not stillborn. Dr. Alexandrov performed two independent tests which confirmed that the baby was born alive. First, he placed her lungs into a container of water and they floated, which indicated that they had air in them. Second, he tied off Hailey's esophagus and intestine and placed them in water. The esophagus and intestine floated, establishing that Hailey had breathed at least one breath on her own. Dr. Alexandrov testified that while a respirator could force oxygen into the lungs, it would not put oxygen into the intestinal tract.

When viewed in a light most favorable to the prosecutor, the evidence in

7

the present case was sufficient to permit a rational trier of fact to conclude that the baby in this case was born alive, so as to sustain petitioner's conviction for first-degree felony murder. Petitioner is not entited to habeas relief on his first claim.

**B. Claim # 2. The jury instruction claim.**

Petitioner next claims that he was deprived of a fair trial because the trial court judge failed to instruct the jury that the fetus must be born alive, in order to convict petitioner of first-degree felony murder.

The Michigan Court of Appeals rejected petitioner's claim, finding that the jury instructions in their entirety, coupled with the arguments made by counsel, were sufficient to inform the jury that in order to convict petitioner of murder, they would have to find that the baby was born alive. *Adams,* Slip. Op. at * 2.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned", and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977). The challenged instruction may not be judged in artificial

8

isolation but must be considered in the context of the instructions as a whole and the trial court record. *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). To warrant habeas relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Scott*, 209 F. 3d at 882. Allegations of trial error raised in challenges to jury instructions are reviewed for harmless error by determining whether they had a substantial and injurious effect or influence on the verdict. *Id.* A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *See Hardaway v. Withrow,* 305 F. 3d 558, 565 (6th Cir. 2002).

In the present case, the evidence at trial, the closing arguments of both the prosecutor and defense counsel, and the trial court's instruction on first-degree felony murder were all sufficient to alert the jurors to the fact that they would have to find that the baby was born alive, in order to convict petitioner of first-degree felony murder. Therefore, the lack of a jury instruction on the question of whether the baby had been born alive did not constitute a fundamental defect resulting in a miscarriage of justice, or deprive petitioner of his due process rights, so as to entitle him to habeas relief on his second claim. *See Boyd v. Minnesota,* 274 F. 3d 497, 501-02 (8th Cir. 2001).

### C. Claim # 3. The ineffective assistance of counsel claims.

Petitioner lastly contends that he was deprived of the effective assistance of counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first contends that trial counsel was ineffective for failing to call an expert on false confessions. The Michigan Court of Appeals rejected this claim, because petitioner failed to make an offer of proof as to what such a potential witness would testify to and therefore failed to make out a factual predicate for his claim. *Adams,* Slip. Op. at * 3.

Petitioner has offered nothing other than speculation that an expert witness could have been obtained to provide such testimony on the issue of false confessions or that such a witness would testify favorably on behalf of petitioner. To present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness'

testimony would have produced a different result. *Malcum v. Burt,* 276 Supp. 2d 664, 679 (E.D. Mich. 2003)(internal citation omitted). Petitioner has failed to demonstrate that he was denied the effective assistance of counsel from his trial counsel's failure to use or call an expert witness concerning the issue of false confessions, because he has failed to present any testimony to establish that an expert witness could have been obtained to testify favorably for him on this issue. *Id.* at 682; *see also Ben-Yisrayl v. Davis,* 245 F. Supp. 2d 960, 969-70 (N.D. Ind. 2002)(capital murder defendant's trial counsel was not ineffective in failing to present expert testimony regarding false confessions; it was too speculative to determine that such evidence would have changed the decision on voluntary confession).

Petitioner next contends that counsel was ineffective for failing to object to the felony murder instructions, because they did not specifically instruct the jurors that in order to convict him of this offense, they would have to find that the baby had been born alive. As mentioned in rejecting petitioner's second claim, *supra,* the absence of such a specific instruction did not prejudice petitioner, in light of the fact that the jurors were made aware, through the evidence, counsel's arguments, and the other jury instructions, that they would have to find that the baby was born alive, in order to convict petitioner of first-degree felony murder. Because counsel's closing arguments and the instructions given by the trial court put the issue squarely before the jury, petitioner was not prejudiced by counsel's

failure to request a specific instruction on the issue of the baby being born alive, so as to support petitioner's claim of ineffective assistance of counsel. *See Millender v. Adams,* 376 F. 3d 520, 526 (6th Cir. 2004).

The Court will reject petitioner's next ineffective assistance of counsel claim for the same reason. In his third ineffective assistance of counsel claim, petitioner contends that his counsel erred in failing to request a full instruction on the issue of witness identification. The trial court gave the jury an instruction on the factors to be used to determine witness identification, but failed to read a portion of the instruction, which informed the jurors that they could consider any times that the witness failed to identify the defendant or gave an identification that did not agree with his or her identification of the defendant during the trial. However, the evidence at trial established that Ms. Kinsey failed to identify petitioner as the shooter at a pre-trial photographic lineup or at trial. In his closing argument, trial counsel argued mistaken identity at great length, pointing out Kinsey's failures to identify petitioner as her assailant. (Tr. 10/16/2002, pp. 536-38; 543, 545). Moreover, as mentioned above, the trial court did instruct the jurors on the factors to be used to determine the accuracy of witness identification. In light of defense counsel's closing argument, as well as the court's general instruction on witness identification, the failure of trial counsel to request that the omitted portion of the witness identification instruction be given to the jurors did not prejudice petitioner, so as to support his ineffective

assistance of counsel claim. *Millender,* 376 F. 3d at 526.

Petitioner lastly claims that the cumulative nature of the errors deprived him of the effective assistance of counsel.  Because the individual claims of ineffectiveness alleged by petitioner are all essentially meritless or were of slight importance, petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance of counsel. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000); *Alder v. Burt,* 240 F. Supp. 2d 651, 655 (E.D. Mich. 2003).

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.*  A federal district court may grant or deny a certificate of appealability when the court

issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of petitioner's claims to be debatable or that they should receive encouragement to proceed further. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated: May 27, 2008

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 27, 2008, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk